UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JOSEPH WILLIAMS                                      CIVIL ACTION NO. 07-0325

VERSUS                                                       JUDGE S. MAURICE HICKS, JR.

UNITED PARCEL SERVICE, INC.                  MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 21) filed by defendant, the United Parcel Service, Inc. ("UPS"). UPS moves for summary judgment on multiple grounds, namely that the plaintiff's claims are barred by the mandatory grievance procedure set forth in the collective bargaining agreement. Plaintiff, Joseph Williams ("Williams"), has not opposed the Motion for Summary Judgment. For the reasons which follow, the Motion for Summary Judgment is **GRANTED**.

**FACTUAL BACKGROUND**[1]

Williams began his employment with UPS in January 1994. His starting position was as an unloader and he was promoted several times until his last position as a driver.

---

[1]Local Rule 56.2 provides:

Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

Pursuant to this rule, this Court will accept the facts presented in UPS's Statement of Undisputed Facts as true and adopts such facts for purposes of the instant Memorandum Ruling. See Record Document 21-14.

Throughout his employment, Williams was a member of the Teamsters Union, Local 568. The National Master United Parcel Service Agreement ("collective bargaining agreement" or "CBA") governed the relationship between UPS and Williams. The CBA sets forth Williams' rights and remedies for work-related complaints.

In September 2004, Williams was charged with a DWI. His license was taken away, and the police issued him a temporary license. Williams refused to take an alcohol test, but admitted that he had been drinking that day. He pled guilty to a lesser charge of careless operation of a vehicle.

Williams claimed that he reported the incident the Center Manager, yet the DWI was not brought to the attention of the proper UPS personnel until three months later. Thus, Williams was not immediately referred to a substance abuse professional ("SAP"). Once the proper UPS personnel realized that Williams had been charged with a DWI and not sent to a SAP, they promptly referred him to a SAP. Williams then filed a grievance, alleging that he had not been referred to a SAP within five days of his DWI charge as required by the CBA. He conceded that it was initially proper for UPS to refer him to a SAP, but claimed that he should have been excused from a SAP assessment because more than five days had passed. He was unsuccessful in his grievance and was sent to a SAP.

On January 26, 2005, Williams was evaluated by Ann Rhodes, who recommended that he complete an alcohol education program for a minimum of ten hours with a certificate of completion. The following day, Williams signed a Rehabilitation Agreement in which he agreed that, as a condition of continuing employment with UPS, he would submit to unannounced alcohol testing as determined by a SAP and Medical Review

Officer ("MRO"). In that agreement, he acknowledged that his employment would be terminated if he failed to comply with the SAP's recommendations and the prescribed aftercare program.

Williams completed the alcohol education program and received his certification of completion on March 7, 2005. On March 8, 2005, an alcohol treatment counselor wrote a report about her assessment of Williams in connection with his return to full driving duties. The counselor agreed that Williams could be returned to his driving duties.

On March 21, 2005, Williams signed the Rehabilitation Agreement a second time. That same day he also signed an Aftercare Documentation and Test Selection Procedures memorandum, in which he certified that he was required to call every weekday to determine whether he would be sent for a follow-up alcohol test and that he was required to immediately report for testing, if so instructed. He acknowledged that his failure to comply with the call-in and testing instructions would lead to disciplinary action, including his termination.

As instructed, Williams called in daily to determine whether he was scheduled to be tested. The procedure was that he called a designated phone number, which placed him into an automated system. He input his social security number, and the system advised him of whether he was required to test. He appeared for five required tests in 2005. However, on December 20, 2005, Williams failed to appear for a required test. On that day, he claims that he called to see whether he needed to be tested. Yet, the computer records of the call-in program show that he did not call on December 20, 2005. Williams was scheduled to test that day and did not report for his mandatory test.

Dr. Greg Elam, the MRO who administers the call-in program, reviewed the call-in

reports and learned that Williams failed to test on December 20, 2005. He advised UPS of Williams' failure to test on December 29, 2005. As a result of this information, UPS terminated Williams' employment for failing to follow the requirements of his rehabilitation agreement.

Williams filed a grievance, arguing that he should not have been terminated. The grievance went to a formal panel hearing and was heard by three union representatives and three UPS representatives. The panel upheld the termination by decision on February 15, 2006. Article 51, Section 2 of the CBA provides that the panel's decision "shall be binding on all parties." Record Document 21, Exhibit A-Part 7 at C-0106.

Other than his first grievance that he should have been referred to the SAP within five days of his DWI charge and his second grievance that he should not have been terminated, Williams filed no other grievance arising out of the above facts. Further, Williams had no problem with the union's representation of him throughout his grievance processes.

## PROCEDURAL BACKGROUND

Williams filed a state court petition on December 29, 2006, alleging that he was wrongfully terminated in violation of the CBA. See Record Document 2-2. The case was removed to this Court on February 16, 2007 and a Removal Order was entered on March 1, 2007. See Record Documents 2 & 5. UPS answered the petition on March 19, 2007, setting forth multiple affirmative defenses, including that Williams' claims were barred by the express language of the CBA. See Record Document 8.

UPS filed the instant Motion for Summary Judgment on February 19, 2008, arguing that Williams' claims fail as a matter of law on both procedural and substantive grounds.

See Record Document 21. UPS served on Williams a copy of its Motion for Summary Judgment on February 19, 2008. Local Rule 7.5W requires a respondent opposing a motion to file a response, including opposing affidavits, memorandum, and such supporting documents as are then available, within 15 days of service of the motion. Williams timely sought an extension of time to file his opposition and the Court granted such extension, ordering Williams to file his opposition by March 19, 2008. See Record Documents 25 & 28. To date, Williams has not opposed the Motion for Summary Judgment.

## LAW AND ANALYSIS

### I.     Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a

judgment in favor of the nonmovant, then summary judgment should be granted.  See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).  Further, Rule 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial. *If the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party*.

Fed. R. Civ. P. 56(e)(emphasis added).  As discussed below, the Court finds it appropriate to enter summary judgment against Williams.

## II. Williams' Claims are Barred by the Mandatory Grievance Procedures Set Forth in the CBA.

Williams alleges that UPS breached the CBA.  UPS moves for summary judgment on both procedural and substantive grounds: (1) Williams' claims are barred by the mandatory grievance procedures in the CBA; (2) Williams' claims are untimely; (3) Williams' failed to exhaust the mandatory grievance process as to some of his claims; and (4) Williams cannot meet the substantive burden of proof on his claims.

### A. Mandatory Grievance Procedures.

"When a collective bargaining agreement establishes a mandatory, binding grievance procedure and gives the union the exclusive right to pursue claims on behalf of aggrieved employees, the results obtained by the union are normally conclusive of the employees' rights under the agreement."  McNair v. U.S. Postal Service, 768 F.2d 730, 735 (5th Cir. 1985).  Hence, "an aggrieved worker whose employment is governed by such an agreement normally lacks standing independently to initiate grievance procedures, to sue for breach of the collective bargaining agreement, or to attack in court the results of

the grievance process." Id. Judicial review of the results obtained through the grievance procedure is generally limited to instances where "the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." DelCostello v. Int'l Broth. of Teamsters, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290 (1983); Landry v. Cooper/T. Smith Stevedoring Co., Inc., 880 F.2d 846, 850 (5th Cir. 1989). Without this rationale, "plenary review by a court of the merits would make meaningless the provisions that the . . . [grievance determination] is final, for in reality it would almost never be final." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 563, 96 S.Ct. 1048, 1055 (1976).

Here, the CBA sets forth Williams' rights and remedies for work-related complaints. Article 51, Section 2 of the CBA specifically provides that the panel's decision "shall be binding on all parties." Record Document 21, Exhibit A-Part 7 at C-0106. Further, Williams pursued his claims through the grievance process. His grievance went to a formal panel hearing and was heard by three union representatives and three UPS representatives. The panel upheld the termination by decision on February 15, 2006. Accordingly, Williams is barred from re-litigating his grievances because the CBA gave the union the exclusive right to pursue grievances on his behalf. The results of the grievance hearings are conclusive.

Williams only avenue to re-litigate the claims asserted in his grievances would be to assert a "hybrid" claim under Section 301 of the Labor Management Relations Act. To succeed on a Section 301 claim, Williams must allege and prove that the union breached its duty of fair representation and that the employer violated the CBA. See DelCostello, 462 U.S. at 164-65, 103 S.Ct. at 2290-2291. Here, Williams' petition made no mention of

union conduct and in no way alleged that the union breached its duty of fair representation. Rather, he testified during his deposition that he had no problem with the union's representation of him during the grievance procedure. Accordingly, Williams has not alleged and cannot maintain a "hybrid" Section 301 claim. His lawsuit is barred because the grievance procedure is binding and conclusive.[2]

## CONCLUSION

The Court finds that Williams' claims are barred by the mandatory grievance process set forth in the CBA. There are no genuine issues of material fact and summary judgment in favor of UPS is appropriate.

Accordingly, the Motion for Summary Judgment (Record Document 21) filed by UPS is granted and all of Williams' claims are dismissed with prejudice. A judgment consistent with the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 25th day of April, 2008.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[2] Because the Court held that Williams' lawsuit is barred due to the binding nature of the grievance procedure, it was not necessary to fully analyze UPS's alternative arguments urging dismissal based on Williams' untimeliness, failure to exhaust, and failure to meet his substantive burden of proof. However, it appears that UPS's alternative arguments are meritorious and would give the Court additional grounds to grant summary judgment in favor of UPS.